UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MOHAMED A. HAFEZ,

                              Plaintiff,

v.                                                              1:17-CV-0219
                                                                (GTS/TWD)
CITY OF SCHENECTADY; GARY R. McCARTHY,
in his Individual Capacity; and DOMENIC
VISCARIELLO, in his Individual Capacity,

                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

MOHAMED A. HAFEZ
  Plaintiff, *Pro Se*
2101 Chrisler Ave.
Schenectady, NY 12303

LEMIRE, JOHNSON & HIGGINS, LLC            GREGG T. JOHNSON, ESQ.
  Counsel for Defendants                         APRIL J. LAWS, ESQ.
P.O Box 2485
2534 Route 9
Malta, NY, 12020

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Mohamed A. Hafez

("Plaintiff") against the City of Schenectady ("City"), Mayor Gary R. McCarthy, and City

Supervisor Domenic Viscariello ("Defendants") pursuant to 42 U.S.C. § 1983 and the First,

Fourth, and Fourteenth Amendments of the United States Constitution, is Defendants' motion for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 11.)  For the reasons set

forth below, Defendants' motion is granted and Plaintiff's Complaint is dismissed.

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Complaint**

Generally, liberally construed, Plaintiff's Complaint asserts six claims.  (Dkt. No. 1 [Pl.'s Compl.].)  First, Plaintiff's Complaint claims that Defendants violated his right to speak freely and petition the government for the redress of grievances under the First Amendment by taking adverse action against him (through failing to obtain either warrants or consent to inspect Plaintiff's rental units, refusing to conduct inspections, denying Plaintiff rental certificates, and initiating a criminal proceeding against him for not having a rental certificate for one of his rental units) in response to his engaging in protected speech (through refusing to give the Building Inspectors consent to inspect his rental units without a warrant, and filing a lawsuit challenging code enforcement practices against the City and Defendant Viscariello).  (*Id.* at ¶¶ 12-13, 19-20.)

Second, Plaintiff's Complaint claims that Defendants violated his right to be free from unreasonable searches and seizures under the Fourth Amendment by requiring him to (1) submit to a demand for an inspection of the property owner's "proprietary business records" (including information about tenants, their rental leases, the property owner's insurance, the property owner himself or herself, and the property owner's business) by the City's code enforcement office without an opportunity for pre-compliance judicial review of the demand, and (2) consent to inspections of his rental units by Building Inspectors without a warrant.  (*Id.* at ¶¶ 5-11, 21-22.)

Third, Plaintiff's Complaint claims that Defendants violated his right to equal protection of the laws under the Fourteenth Amendment by granting rental certificates to "similarly situated landlords that own rental properties of the same type and class code, that have registered, applied

for rental certificates and paid the same inspection fees . . . and have consented to warrantless inspections of their properties."  (*Id.* at ¶¶ 14, 23-24.)

Fourth, Plaintiff's Complaint claims that Defendants violated his right of substantive due process under the Fourteenth Amendment by enacting and/or enforcing City of Schenectady Code § 210-5 (a/k/a the "Schenectady Rental Ordinance" or "the Ordinance"), which does not provide clear procedures for the granting of rental certificates when consent to inspect is not granted and a warrant is not obtained, and which encourages arbitrary and discriminatory enforcement.  (*Id.* at ¶¶ 25-26.)

Fifth, Plaintiff's Complaint claims that Defendants were unjustly enriched in violation of New York State common law by collecting and inequitably retaining inspection and rental-application fees from Plaintiff without performing any inspections of his rental units or granting him any rental certificates.  (*Id.* at ¶¶ 10-11, 27-28.)

Sixth, and last, Plaintiff's Complaint claims that Defendants intentionally inflicted emotional stress upon Plaintiff in violation of New York State common law by the aforementioned retaliation and harassment.  (*Id.* at ¶¶ 29-30.)

Familiarity with the particular nature of these claims, and the factual allegations supporting them, is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*See generally* Dkt. No. 1.)

## B.    Parties' Briefing on Defendants' Motion for Judgment on the Pleadings

### 1.    Defendants' Memorandum of Law

Generally, Defendants move to dismiss Plaintiff's Complaint for five reasons.  (Dkt. No. 11, Attach. 7, at 22-28 [Defs.' Mem. of Law].)  First, Defendants argue that Plaintiff's litigation

is foreclosed by principles of res judicata as a result of his previous federal court litigation against the City and McCarthy.  (*Id.* at 22.)

Second, Defendants argue that Plaintiff's equal protection claim must be dismissed because he does not identify in the Complaint any similarly situated comparators.  (*Id.* at 23.) Defendants argue that the other landlords he alleges are similarly situated in fact are not similarly situated because (as Plaintiff acknowledges) those landlords had consented to inspection of their rental properties, while Plaintiff had refused consent to inspect his properties. (*Id.*)

Third, Defendants argue that Plaintiff's constitutional claims must be dismissed because he has not alleged any state action taken by Defendants other than that he was subjected to enforcement proceedings for failing to comply with the Ordinance.  (*Id.* at 23-24.)  Defendants argue that Plaintiff's First and Fourth Amendment claims should be dismissed on the alternative ground that, as recognized in previous cases of this Court, the Ordinance is constitutional.  (*Id.* at 24.)  Defendants also argue that any substantive due process claim in Plaintiff's Complaint must be dismissed on the alternative ground that he has not alleged facts plausibly suggesting that Defendants' actions shocked the conscience or otherwise met the high standard for such a claim. (*Id.* at 24-25.)

Fourth, Defendants argue that Plaintiff's claims against the City must be dismissed based on principles of municipal liability because Plaintiff has not alleged facts plausibly suggesting that those claims involved an official policy, practice, or custom.  (*Id.* at 25.)

Fifth, Defendants argue that Plaintiff's claims against McCarthy and Viscariello must be dismissed based on both lack of personal involvement and qualified immunity because Plaintiff has not alleged facts plausibly suggesting that McCarthy and Viscariello were personally

involved in the alleged violations or participated in any acts that were unconstitutional, caused

him an injury, or violated clearly established law.  (*Id.* at 25-28.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, Plaintiff makes nine arguments in opposition to Defendants' motion.  (Dkt.

No. 15, Attach.1, at 14-25 [Pl.'s Opp'n Mem. of Law].)    First, Plaintiff argues that Defendants'

motion to dismiss is untimely under Fed. R. Civ. P. 12(b)(6) because Defendants have already

filed their Answer, and that, alternatively, the motion must be denied if considered under Fed. R.

Civ. P. 12(c) because there are factual issues that must be decided by a jury.  (*Id.* at 1-2.)

Second, in opposition to Defendants' first argument, Plaintiff argues that res judicata

does not apply here because (a) the events at issue in this litigation post-date those at issue in

*Hafez I*, (b) the law governing Fourth Amendment challenges to records inspections changed

after the decision in *Hafez I* (through issuance of *City of Los Angeles, Calif. v. Patel*, 135 S.Ct.

2443 [2015]), (c) the "challenges" made in this action are different than those made in *Hafez I*,

and (d) *Hafez I* did not include McCarthy as a defendant.  (*Id.* at 14-16.)

Third, in opposition to Defendants' second argument, Plaintiff argues that he has

sufficiently identified similarly situated persons for the purposes of his equal protection claim

because (a) he is comparing his properties to "similarly situated properties . . . owned by similar

landlords" who "were granted rental certificates for their units," and (b) he is proceeding under a

"class of one" theory.  (*Id.* at 16-19.)  Plaintiff notes that he had listed those similar properties in

"Table III" and highlighted a specific landlord that was listed on that Table as an example of a

similarly situated person.  (*Id.* at 16-17.)

Fourth, in opposition to Defendants' third argument, Plaintiff argues that he has alleged a state action in his Complaint, citing specifically to the allegation that he was required to defend himself in criminal court as a result of his not having a rental certificate.  (*Id.* at 19.)

Fifth, in opposition to Defendants' third argument, Plaintiff argues that his Fourth Amendment claims cannot be dismissed based on previous rulings that the Ordinance is constitutional because he is challenging the Ordinance as applied.  (*Id.* at 20.)  He also argues that there is a question of fact as to whether Defendants acted with an improper intent because he paid his inspection fees but there is no evidence that the City made any attempt to obtain a warrant to inspect his rental properties.  (*Id.*)

Sixth, in opposition to Defendants' third argument, Plaintiff argues that he has alleged a sufficient substantive due process claim.  (*Id.* at 20-21.)  Specifically, Plaintiff argues that he has a property interest in the rental certificates because he has been granted them in the past, and that there are no legitimate reasons why the City failed to obtain warrants, inspect his properties, and grant him rental certificates.  (*Id.*)

Seventh, in opposition to Defendants' fourth argument, Plaintiff argues that municipal liability principles do not bar his claim against the City because McCarthy (as Mayor) was the final decision-maker for the process authorizing inspection of his business records, and Viscariello (as Supervisor) was in charge of enforcing the Ordinance and failed to supervise his subordinates related to inspections of business records, obtaining inspection warrants, and granting rental certificates.  (*Id.* at 24.)

Eighth, in opposition to Defendants' fifth argument, Plaintiff argues that both McCarthy and Viscariello were personally involved because McCarthy signed the Ordinance into law and Viscariello enforced it.  (*Id.* at 23.)

6

Ninth, in opposition to Defendants' fifth argument, Plaintiff argues that McCarthy and Viscariello are not entitled to qualified immunity because the right to be free from warrantless searches, retaliation, and arbitrary prosecution are all well established. (*Id.* at 24-25.) Plaintiff argues that, because he was granted rental certificates in the past, failure to grant the certificates now due to his refusal to allow warrantless inspections is fatal to Defendants' claims of entitlement to qualified immunity. (*Id.*)

In addition, in an affidavit, Plaintiff requests leave to file an Amended Complaint doing two things: (1) curing the pleading defects in his Complaint; and (2) adding Jeffrey Briere and Krystine Smith as defendants. (Dkt. No. 15, at ¶ 32 [Pl.'s Aff.]; Dkt. No. 15, Attach. 1, at 19 [Pl.'s Opp'n Mem. of Law].)

### 3.    Defendants' Reply Memorandum of Law

Generally, Defendants make six arguments in reply to Plaintiff's arguments. (Dkt. No. 18, at 5-9 [Defs.' Reply Mem. of Law].) First, Defendants argue that res judicata applies to this case because (a) the issues presented in this action are the same as those presented in *Hafez I*, and (b) that the Supreme Court case cited by Plaintiff (*City of Los Angeles, Calif. v. Patel*, 135 S.Ct. 2443 [2015]) is not applicable here. (*Id.* at 5-6.)

Second, Defendants argue that Plaintiff has not identified similarly situated comparators to sustain a plausible equal protection claim because, as they pointed out in their memorandum of law (and Plaintiff has ignored) the other property owners he references cannot be similarly situated to Plaintiff because, unlike him, they consented to inspection of their properties. (*Id.* at 6-7.)

Third, Defendants argue that Plaintiff's other constitutional claims must be dismissed as a matter of law because his opposition papers have not cured the defects in these claims.  (*Id.* at 7-8.)

Fourth, Defendants argue that Plaintiff's First Amendment, Fourth Amendment, and equal protection claims against the City must be dismissed because his opposition papers have not identified a policy, practice, or custom sufficient to impose municipal liability.  (*Id.* at 8.)

Fifth, Defendants argue that Plaintiff's claims against McCarthy and Viscariello must be dismissed based on lack of personal involvement because his opposition papers have not alleged facts plausibly suggesting personal involvement.  (*Id.* at 8-9.)

Sixth, Defendants argue that Plaintiff's claims against Defendants McCarthy and Viscariello must be dismissed because Plaintiff's opposition papers have not overcome the doctrine of qualified immunity.  (*Id.*)

## II.    GENERAL LEGAL STANDARDS

### A.    Legal Standard Governing a Motion for Judgment on the Pleadings Under Fed. R. Civ. P. 12(c)

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).  It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F.

9

Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

10

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under

### B.    Legal Standard Governing Claims Under 42 U.S.C. § 1983

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 [1980] [internal quotations omitted]).  "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 [1979]).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Kregler v. City of New York*, 821 F. Supp.

---

Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

2d 651, 655-656 (S.D.N.Y. 2011) (quoting *Wright v. Smith*, 21 F.3d 496, 501 [2d Cir.1994] [internal quotation marks omitted]).  A plaintiff may allege the personal involvement of a defendant who occupies a supervisory position by alleging that the defendant did one or more of the following things: "(1) directly participated in the infraction; (2) failed to remedy the wrong after learning of the violation; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) exhibited 'gross negligence' or 'deliberate indifference' to the constitutional rights of [the plaintiff] by having actual or constructive notice of the unconstitutional practices and failing to act." *Kregler*, 821 F. Supp. 2d at 655-56 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 [2d Cir.1995]; *Wright*, 21 F.3d at 501).

A municipality may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 [1978]).  In the absence of such a custom or policy, a municipality may not be held liable on a § 1983 claim for the actions of its employees under a theory of vicarious liability.  *See Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 691, 98 S. Ct. 2018).  Thus, isolated acts of municipal employees are typically not sufficient to establish municipal liability.  However, acts done "pursuant to municipal policy, or [that] were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware" would justify liability of the municipality.  *Jones*, 691 F.3d at 81.  Further, "a municipal custom, policy, or

usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses. " *Id.*

### C.    Legal Standard Governing a Motion to Amend a Pleading

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993). Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given in the absence of any apparent or declared reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *See Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer v. First Franklin Loan Servs, Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010) (Suddaby, J.); *Jones v. McMahon*, 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007) (Lowe, M.J.). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 [2d Cir. 2002]).

## III.    ANALYSIS

### A.    Whether the Doctrine of Res Judicata Bars Plaintiff's Claims

After carefully considering the matter, the Court answers this question in the affirmative for the reasons in Defendants' memoranda of law. (Dkt. No. 11, Attach. 7, at 22 [Defs.' Mem. of

Law]; Dkt. No. 18, at 5-6 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

"Res judicata bars re-litigation if '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *Soules v. Connecticut Dept. of Emergency Servs. and Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018) (quoting *Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 285 [2d Cir. 2000]); *Lachaab v. State Univ. of New York (SUNY) Bd. of Tr.*, 16-CV-1019, 2017 WL 4350565, at *2 (N.D.N.Y. Aug. 4, 2017) (Mordue, J.).  "'[A] party cannot avoid the res judicata effect of [a prior] judgment by bringing suit against a new defendant that is in privity with the original defendant.'" *Lachaab*, 2017 WL 4350565, at *2.  Notably, "'the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion.'" *Id.* at *3 (citing *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa, S.A.*, 56 F.3d 359, 367-68 [2d Cir. 1995]).  "'[R]es judicata may . . . be asserted by a party that is in privity with a party to an earlier action' where 'the interests of the defendant were adequately represented in the earlier action.'"  *Randall v. Amica Mutual Ins. Co.*, 17-CV-0013, 2017 WL 6408937, at *5 (N.D.N.Y. Sept. 22, 2017) (Sannes, J.) (quoting *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328 [S.D.N.Y. 2008]).  When determining whether the claims were or could have been raised in the prior action, a court must consider whether the current lawsuit concerns "'the same claim–or nucleus of operative facts–as the first suit,' applying three considerations: '(1) whether the underlying facts are related in time, space, origin, or motivation;

15

(2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations.'" *Soules*, 882 F.3d at 55 (quoting *Channer v. Dept. of Homeland Sec.*, 527 F.3d 275, 280 [2d Cir. 2008]).  "Where all requirements are met, res judicata can act as a bar to virtually any sort of claim, including constitutional challenges to the facial validity of municipal regulations." *Monahan*, 214 F.3d at 290.

In *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207 (N.D.N.Y. 2012) (D'Agostino, J.) ("*Hafez I*"), the Court noted that Plaintiff alleged claims of "retaliation in violation of his First Amendment rights, unlawful search and seizure in violation of his Fourth Amendment rights, selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment, and a state-law cause of action for intentional infliction of emotional distress," as well as that the Ordinance was unconstitutionally vague and that the requirement to obtain a rental certificate had been unfairly enforced against him for multiple reasons including retaliation for prior tax grievances and his "newcomer" status. *Hafez I*, 894 F. Supp. 2d at 209.  When reciting the facts of that case, the Court noted that Plaintiff had been sent a letter by one of the defendants in which it was indicated that rental certificates had been denied for some of plaintiff's rental units "because Plaintiff prevented an inspection of the building's basement." *Id.* at 212.  The Court granted summary judgment for the defendants and made the following findings: (1) the Ordinance was not unconstitutionally vague; (2) the inspection requirement did not violate the Fourth Amendment because it required the City to obtain a warrant if the landlord refused consent to inspect the property, thereby disallowing non-consensual warrantless inspections; (3) while Plaintiff had engaged in protected speech for the purposes of his First Amendment retaliation claim, he failed to show that the defendants' conduct was motivated by Plaintiff's

exercise of his rights, there was no evidence to show that the inspectors enforcing the Ordinance against him even had knowledge of his protected speech, and the evidence was inadequate to show a causal connection between Plaintiff's protected speech and the defendants' conduct; (4) Plaintiff had not shown the existence of similarly situated comparators to sustain an equal protection claim; and (5) exercise of supplemental jurisdiction over Plaintiff's state law claims was not warranted based on the dismissal of his federal claims. *Id.* at 213-30. Because *Hafez I* therefore involved conduct and allegations very similar to those involved in Plaintiff's current lawsuit, the Court must determine whether res judicata is applicable.

As to the first element, it is clear that *Hafez I* involved a adjudication on the merits. *See Smith v. City of New York*, 130 F. Supp. 3d 819, 828 (S.D.N.Y. 2015) ("Clearly, summary judgment is an adjudication on the merits for res judicata purposes.").

As to the second element, Plaintiff argues that the doctrine of res judicata does not apply because, although the City and Viscariello were defendants in *Hafez I*, McCarthy was not. However, sufficient reason exists to find that McCarthy was in sufficient privity with the defendants in *Hafez I*. For the sake of brevity, the Court will not linger on the fact that, during the pendency of *Hafez I* (which concluded in April 2012 when U.S. District Judge Mae A D'Agostino issued a judgment on the defendants' motion for summary judgment), Plaintiff could have named McCarthy as a defendant, because (1) Plaintiff's factual allegations against the City and Viscariello in *Hafez I* and against McCarthy in this action all stem from official actions taken on behalf of the City (despite Plaintiff's claims to have sued the individual defendants in their personal capacities), (2) at the time that Plaintiff filed his Complaint in *Hafez I*, he knew of

McCarthy (mentioning McCarthy in his capacity as City Council President in 2010),[2] and (3) McCarthy served as Mayor of Schenectady during at least a portion of the pendency of *Hafez I*.[3] More important is the fact that Brian U. Stratton (against whom *all* of the legal claims in the *Hafez I* complaint were asserted) was in privity with McCarthy.  According to Plaintiff, Stratton was the Mayor of Schenectady at the time Plaintiff filed the *Hafez I* complaint in May of 2010. *Hafez v. City of Schenectady*, 10-CV-0541, Complaint, at ¶ 3 (N.D.N.Y. filed May 5, 2010). Although Plaintiff claims to have sued Stratton in his personal capacity, that claim is undermined by Plaintiff's factual allegations against Stratton in his role as Mayor.  *Id.* at ¶¶ 3, 7, 27-30, 36, 39-43.  Moreover, at their core, the actions allegedly taken by Stratton in his role as Mayor do not differ materially from the actions allegedly taken by McCarthy in his role as Mayor: both regard the enforcement of a City code section that Plaintiff does not like.  (*Compare id. with* Dkt. No. 1, at ¶¶ 3, 7, 10-14, 16-18, 20, 22, 24, 28, 30 [Compl.] *and* Dkt. No. 15, at ¶¶ 6, 8-15, 18

---

[2]      *Hafez v. City of Schenectady*, 10-CV-0541, Complaint, at ¶ 23 (N.D.N.Y. filed May 5, 2010).

[3]      (Dkt No. 15, at ¶ 11 [Pl.'s Aff.] [noting that he wrote a letter to oppose McCarthy's *re*-election in the 2015 mayoral race].)  *See also, e.g., Mayor's Office*, City of Schenectady, New York, https://www.cityofschenectady.com/210/Mayors-Office ("Gary R. McCarthy has served as Mayor since April 2011 . . . .") (last visited Mar. 12, 2018); *In re Collins*, 540 B.R. 54, 61 n.5 (E.D.N.Y. 2015) (taking judicial notice of information contained on the New York State Department of Education's website, noting that such information was publically available); *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, 701 F. Supp. 2d 356, 367 (E.D.N.Y. 2010) (noting that, at the motion to dismiss stage, "the court may take judicial notice of facts 'not subject to reasonable dispute' because such facts are 'generally known' or 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,'" and that "[c]ourts routinely take judicial notice of extrinsic facts that may be independently, and reliably, verified"); *Piccolo v. New York City Campaign Fin. Bd.*, 05-CV-7040, 2007 WL 2844939, at *2 & n.2 (S.D.N.Y. Sept. 28, 2007) (noting that a court can rely on "matters of public record" when considering a motion to dismiss and stating specifically that the court took judicial notice of facts such as election dates and results).

[Pl.'s Aff.].)  Finally, there are no factual allegations in any of the pleadings (or Plaintiff's opposition affidavit) that plausibly suggest that Mayor Stratton would not have adequately represented the interests of his successor, Mayor McCarthy.  *See also Hafez I*, 894 F. Supp. 2d at 209.  For all of these reasons, the Court finds that McCarthy, while not named as a defendant in *Hafez I*, was in sufficient privity with the *Hafez I* defendants.

As to the third element, Plaintiff argues that res judicata does not apply to this litigation because all of the instances of failure to inspect and denials of rental certificates that he alleges as the basis of his claims occurred after the end of his previous litigation.  However, the fact that acts occurred after the termination of the previous litigation does not necessarily preclude application of res judicata.  *See Monahan*, 214 F.3d at 289 (noting that the assertion of new incidents arising from application of the challenged policy is insufficient to bar application of res judicata because the relevant inquiry is whether the incidents are part of the same transaction or connected series of transactions, applying "a flexible, common-sense construction that recognizes the reality of the situation"); *Woods v. Dunlop Tire Corp*. 972 F.2d 36, 39 (2d Cir. 1992) (finding that, even though some of the acts alleged in the second suit occurred up to a year after the dismissal of the first action, it was readily apparent that they were all part of the same cause of action and arose from a single core of operative facts).

As noted above, Plaintiff's claims in *Hafez I*, while based on somewhat different factual allegations than those in the current litigation, constituted challenges to, inter alia, the inspection requirement and the City's denial of rental certificates for Plaintiff's properties.  Moreover, the incidents forming the basis of the Complaint in the current action appear to be a continuation of one of the alleged wrongdoings in *Hafez I*, namely, the City's refusal to grant him rental

certificates due to his declining to give consent to inspect portions of his rental units. Consequently, even if the claims in this action were not decided in *Hafez I*, Plaintiff could have reasonably asserted them in *Hafez I.*

Plaintiff argues that he has raised a new claim (i.e., one not raised in *Hafez I*) in the form of his constitutional challenge to the provision in the Ordinance requiring him to provide certain business records to the City as part of his landlord registration (Section 210-5), alleging that this provision is unconstitutional when considering the Supreme Court's decision in *City of Los Angeles, Calif. v. Patel*, 135 S.Ct. 2443 (2015).  (Dkt. No. 15, Attach. 1, at 14-15 [Pl.'s Opp'n Mem. of Law].)  However, Plaintiff does not allege that Section 210-5 was enacted after *Hafez I* such that he would not have been subject to the same registration requirements at the time of the events underlying that previous action.  Rather, in *Hafez I*, District Judge D'Agostino noted that the City Council enacted Section 210 in October 9, 2007.  *Hafez I*, 894 F. Supp. 2d at 209. Given that Sections 210-4 and 210-5 require the owner/landlord of a rental property to file the registration statement (with the relevant information from Plaintiff's records) before offering any unit for rent or renting any unit, it is not reasonable to believe that Plaintiff was unaware of the registration requirement (and any consequent problems) at the time of *Hafez I*; after all, the claims in *Hafez I* all related to Plaintiff's conduct as a landlord, including for buildings he was currently renting to tenants.  *Id.* at 211-12.  There is therefore no discernable reason why Plaintiff would not have been able to assert this claim in *Hafez I.*[4]

---

[4]    To the extent that Plaintiff argues that this was not a viable argument until the Supreme Court's 2015 decision in *Patel*, the Court is not convinced.  As the Supreme Court notes in *Patel*, the Court had never held that facial challenges could not be brought under an "otherwise enforceable provision of the Constitution," even if it had not specifically and affirmatively held previously that facial challenges were permissible under the Fourth

Based on the above, the Court finds that Plaintiff's Complaint in the current action is barred by res judicata as a result of *Hafez I*. However, the Court notes that, even were it to find that res judicata was inapplicable, it would still grant Defendants' motion to dismiss for the reasons that follow.

**B.      Whether the Ordinance Is Unconstitutionally Vague**

After carefully considering the matter, the Court answers this question in the negative for the following reasons.

"'As one of the most fundamental protections of the Due Process Clause, the void-for-vagueness doctrine requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them.'" *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010). A statute is impermissibly vague if it either (a) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (b) "authorizes or even encourages arbitrary and discriminatory enforcement." *VIP of Berlin*, 593 F.3d at 186 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 [2000]). "'The degree of vagueness tolerated in a statute varies with its type: economic regulations are subject to a relaxed vagueness test, laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all.'" *VIP of Berlin*, 593 F.3d at 186.

---

Amendment. *Patel*, 135 S.Ct. at 2449. The Supreme Court also cited multiple examples of cases where it had considered facial challenges to warrantless searches under the Fourth Amendment, all of which pre-date *Hafez I*. *Id*. at 2450. Therefore, even if *Patel* provides a closer factual situation to Plaintiff's claim (a proposition that will be discussed in a subsequent part of this Decision and Order), there was significant authority to signal to Plaintiff that he could have raised a facial challenge to the registration requirement in the Ordinance at the time of *Hafez I*.

Here, Plaintiff argues that the Ordinance is unconstitutionally vague because "it provides no clear procedures to follow to grant rental certificates when consent to inspect is not granted and a warrant is not obtained, and it encourages arbitrary and discriminatory enforcement." (Dkt. No. 1, at ¶ 26 [Pl.'s Compl.].)  Section 210-8(A) indicates that, in order to rent a property, a landlord must have a valid rental certificate from the City; to obtain a rental certificate, the landlord must file a written application and undergo an inspection by the Building Inspector to determine whether the rental property is free of violations of the enumerated health and safety standards.  Schenectady City Code § 210-8(A).  Section 210-9(B) of the Ordinance states that,

> at the request of the Building Inspector, the Corporation Counsel is authorized to make application to the City Court of the City of Schenectady or any other court of competent jurisdiction for the issuance of a search warrant to be executed by a police officer in order to conduct an inspection of any premises believed to be subject to this chapter.  The Building Inspector may seek a search warrant whenever the owner, managing agent or occupant fails to allow inspections of any dwelling unit contained in the rental property where there is a reasonable cause to believe that there is a violation of this chapter, or . . . of any code of the City of Schenectady or any applicable fire code.

Schenectady City Code § 210-9(B).

The Ordinance as a whole clearly states what conduct is prohibited: renting a property without an approved landlord registration and a valid rental certificate.  Schenectady City Code §§ 210-5, 210-8(A).  The pertinent question is therefore whether the Ordinance authorizes or encourages arbitrary or discriminatory enforcement.  The Court finds that it does not.

Plaintiff appears to take issue with the fact that the Ordinance does not set a time limit in which the City must seek or obtain a warrant to conduct an inspection of rental properties after an owner/landlord has refused consent to inspect.  However, Plaintiff's attempt to read a mandatory duty to conduct an inspection into the Ordinance is unavailing.  Notably, the language

22

of Section 210-9(B) suggests that the decision to seek a warrant is discretionary, not mandatory. *See* Schenectady City Code § 210-9(B) ("The Building Inspector *may* seek a warrant . . ." ); *see also Rastelli v. Warden, Metropolitan Corr. Ctr.*, 782 F.2d 17, 23 (2d Cir. 1986) ("The use of a permissive verb –'may review' instead of 'shall review'–suggests a discretionary rather than mandatory review process."); *Agunbiade v. U.S.*, 893 F. Supp. 160, 163 (E.D.N.Y. 1995) (finding that a statute stating that the "'Attorney General and the [FBI] *may* investigate' . . . 'provides a discretionary rather than mandatory authority to the Attorney General to investigate crimes.'") (emphasis in original); *Spillane v. Shalala*, 92-CV-0461, 1993 WL 276793, at *3 (D. Conn. June 7, 1993) ("The use of the non-mandatory term 'may' demonstrates Congress' intent to grant the Secretary complete discretion to decide. . . ."). The discretionary nature of the language in Section 210-9(B) undermines Plaintiff's argument that the City was required to seek and obtain a warrant once he refused consent to inspect his rental properties, as well as his implicit argument that this section is vague because it does not include a specified time period in which the City must obtain a warrant; a specified time period would be inconsistent with a discretionary duty.

However, the fact that the Ordinance leaves it to the discretion of the City to determine whether to seek a warrant does not mean that it authorizes or encourages arbitrary or discriminatory enforcement. In addition to the discretionary language, Section 210-9(B) further states that the Building Inspector can seek a warrant once the owner/landlord has refused consent to inspect only where "there is a reasonable cause to believe that there is a violation" of the City ordinances or fire codes. Schenectady City Code § 210-9(B). Therefore, by the plain language of the Ordinance, the City cannot seek a warrant in every case simply because an owner/landlord

23

refused consent, but rather it must have "reasonable cause" to believe there is some sort of violation occurring in the rental property. This condition prevents arbitrary or discriminatory enforcement by requiring the City to show reasonable cause when requesting a warrant, a constitutional safeguard that protects owners/landlords from unreasonable searches of their properties. *See Milner v. Duncklee*, 460 F. Supp. 2d 360, 368 (D. Conn. 2006) ("'It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed' . . . [and] [t]he warrant requirement is the main safeguard against that evil[;] [t]he primary purpose of the warrant requirement is to take the task of finding probable cause out of the hands of interested officers and put the task in the hands of a detached, neutral judge or magistrate.") (citing *Welsh v. Wisconsin*, 466 U.S. 740, 748 [1984]). Given this limiting condition on the circumstances in which the Building Inspector may seek a warrant and the discretionary nature of the duty to seek a warrant, Plaintiff has not alleged that the Ordinance is unconstitutionally vague.[5] *Cf. Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972)

---

[5]      In a recent Summary Order, the Second Circuit noted that a plaintiff argued that a similar ordinance was unconstitutional because "a warrant could not be obtained where the Town did not have reasonable cause to suspect a Code violation, thus forcing law-abiding property owners to consent to warrantless searches in order to rent their properties"; the Second Circuit rejected this argument based on other conditions in the ordinance not applicable to the Ordinance in this case. *Mamakos v. Town of Huntington*, 17-2318 (Mar. 19, 2018) (summary order). However, Plaintiff has not alleged facts plausibly suggesting (or even argued) that his is a case where reasonable suspicion did not exist. Rather, the violations outlined in *Hafez I* related to Plaintiff's conduct that violated the Ordinance. Moreover, the evidence submitted with his opposition affidavit in this action shows that he had been renting an apartment in 2015 for which he did not have a valid rental certificate. As a result, the Court finds that reasonable cause appears to have existed to believe that violations of the Ordinance were occurring in Plaintiff's properties. (Dkt. No. 15, at 22-24.) In addition, although an individual cannot obtain a rental certificate without an inspection (either based on consent or a warrant), the Ordinance provides the option to apply for a temporary rental certificate, which does not require an inspection. Schenectady City Code § 210-8(B). The availability of the temporary rental certificate sufficiently mitigates any concerns that the Ordinance would force Plaintiff to choose between submitting to warrantless inspections and being completely unable to rent his properties.

(finding that an ordinance permitted and encouraged arbitrary and discriminatory enforcement because there were "*no* standards governing the exercise of discretion granted by the ordinance") (emphasis added). Plaintiff also has not alleged facts to plausibly suggest that the Defendants otherwise applied the discretionary nature of the warrant standard in an arbitrary or discriminatory nature.

Plaintiff's additional concern appears to be that the City has kept his inspection fee but has not sought a warrant to conduct the inspections nor actually conducted the inspections. However, Plaintiff has not alleged any facts plausibly suggesting that he has petitioned the City to have his inspection fee returned and that it had been refused. Even construing the Complaint liberally, the Court finds that Plaintiff has not plausibly alleged facts sufficient to show that the Ordinance is unconstitutionally vague as applied.[6]

### C.    Whether *Monelle* Bars Plaintiff's Claims Against the City

After carefully considering the matter, the Court answers this question in the affirmative for the reasons in Defendants' memoranda of law. (Dkt. No. 11, Attach 7, at 25 [Defs.' Mem. of Law]; Dkt. No. 18, at 8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

A municipality may be liable under 42 U.S.C. § 1983 "if the governmental body itself 'subjects' a person to a deprivation or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). However, municipalities can only be held liable

---

[6]    Notably, Plaintiff has expressly challenged the inspection requirement of the Ordinance as applied; he did not assert a facial challenge. (Dkt. No. 1, at 3 [Pl.'s Compl.] ["The Ordinance Inspection Provision [i]s Unconstitutional [a]s Applied"]; Dkt. No. 15, Attach. 1, at 20 [Pl.'s Opp'n Mem. of Law] [noting that his Fourth Amendment challenge related to the failure of the City to obtain warrants to inspect his properties is an "as applied challenge"].)

for their own acts; they cannot be held vicariously liable for the actions of their employees under Section 1983. *Connick*, 563 U.S. at 60. To establish municipal liability based on acts of a public official under Section 1983, Plaintiff must show that (1) the actions were taken under the color of law, (2) there was a deprivation of a constitutional or statutory right, (3) causation, (4) damage, and (5) that an official policy of the municipality caused the constitutional injury. *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 60.

Plaintiff alleges that the City violated his constitutional rights in the following ways: (1) requiring him to produce business records in violation of his right to privacy and freedom from warrantless searches under the Fourth Amendment; (2) refusing to grant him rental certificates in retaliation for asserting his rights under the First and Fourth Amendments; and (3) treating him differently from similarly situated landlords in violation of the Fourteenth Amendment. (Dkt. No. 1, at ¶¶ 7-8, 11-14 [Pl.'s Compl.].) Defendants argue that Plaintiff has not alleged (and cannot demonstrate) how his rights were violated pursuant to an official policy, practice, or custom. (Dkt. No. 11, Attach. 7, at 25 [Defs.' Mem. of Law].) In response, Plaintiff argues only that the City is liable for "any unconstitutional acts committed by the two individual defendants [McCarthy and Viscariello] that caused . . . injury." (Dkt. No. 15, Attach. 1, at 22-23 [Pl.'s Opp'n Mem. of Law].) He elaborates in the affidavit submitted with his opposition memorandum of law, in which he alleges (conclusorily) that Viscariello's actions (which were approved, carried out, and acquiesced to by McCarthy) amounted to official policies and practices that represent municipal decisions. (Dkt. No. 15, at ¶ 29 [Pl.'s Aff.].)

Plaintiff's argument is unpersuasive because, as already noted, a municipality cannot be held vicariously liable for the actions of its employees. *Connick*, 563 U.S. at 60. Additionally, as Defendants argue, even when construed liberally, the Complaint (along with Plaintiff's opposition memorandum of law and affidavit) does not plead facts plausibly suggesting that an official policy, practice, or custom existed as a result of any actions taken by Viscariello or McCarthy, much less that any such policy, practice, or custom caused Plaintiff's alleged injury. The Court therefore finds that Plaintiff's claims against the City must be dismissed.

### D.    Whether a Lack of Personal Involvement or the Doctrine of Qualified Immunity Bars Plaintiff's Claims Against McCarthy and Viscariello

After carefully considering the matter, the Court answers this question in the affirmative for the reasons in Defendants' memoranda of law. (Dkt. No. 11, Attach. 7, at 25-28 [Defs.' Mem. of Law]; Dkt. No. 18, at 8-9 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

#### a.    Personal Involvement

"To establish a [S]ection 1983 claim, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity.'" *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016). A plaintiff can establish personal involvement by showing any one of the following five circumstances: (1) "the defendant participated directly in the alleged constitutional violation"; (2) "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong"; (3) "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"; (4) "the defendant was grossly negligent in supervising subordinated who committed wrongful acts"; or (5) "the defendant exhibited

deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." *Warren*, 823 F.3d at 136 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 [2d Cir. 1995]).  Direct participation has been defined as "'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).

In the Complaint, Plaintiff alleged that McCarthy approves City policies and practices and votes on and signs ordinances into law.  (Dkt. No. 1, at ¶ 3 [Pl.'s Compl.].)  Plaintiff alleged that Viscariello is "in charge of enforcing the rental property ordinance and rental unit inspections."  (*Id.*)  Plaintiff also broadly alleged a failure to train and supervise employees.  (*Id.* at ¶ 18.)  In the affidavit submitted with his opposition memorandum of law,[7] Plaintiff further alleged that McCarthy "approved changes to the [Ordinance] with the knowledge that the City did not have enough code officers to inspect the approximately 16,000 rental units in Schenectady," "failed to regularly train Code Enforcement personnel on how to avoid potential violations of the constitutional rights of landlords and tenants," "approved changes to the City Code that officially modified the function of the Housing Standard Review Board . . . to just serve as a liaison and not have the power to hear appeals or rule on [Ordinance] violations, denying landlords due process to be heard before a neutral board," and "aggressively pushed for

---

[7]        In an effort to afford Plaintiff with the special solicitude due to *pro se* litigants, the Court has considered the statements in this affidavit in conjunction with the Complaint when determining the sufficiency of Plaintiff's allegations.  *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 462 n.79, 492 (N.D.N.Y. 2009) (Suddaby, J, and Lowe, M.J.) (noting that "special solicitude permits a *pro se* plaintiff to effectively amend the allegations in his complaint while responding to a motion to dismiss for failure to state a claim."); *see also Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'").

forcing [the] landlords' registration process by which any landlord must first register with the code department, complete the Landlord Registration Statement for [a] Rental Certificate, and produce his/her business records for inspection and copying before he is allowed to rent his properties." (Dkt. No. 15, at ¶¶ 13-15, 18 [Pl.'s Aff.].) Plaintiff alleges that Viscariello is "responsible for the [Ordinance] enforcement process, rental unit inspections and for the conduct and actions of subordinate code officers and code staff," supervised the staff who failed to grant rental certificates, failed to apply for inspection warrants or seek consent of the tenants to inspect the rental properties, accepted inspection fees without performing inspections and collected landlord business records, "failed to train and supervise code officers and staff that they should inform landlords of their rights to refuse to consent to the production of their business records during the registration process . . . and failed to supervise his staff that conducted non-consensual inspections of [Plaintiff's] business records," "failed to train and supervise code officers and staff that they should inform landlords . . . of [their] constitutional rights to refuse to consent to warrantless inspection," and "failed to implement any procedure for granting [Plaintiff] any temporary rental certificates . . . until inspection warrants are obtained." (*Id.* at ¶¶ 20-27.)

Plaintiff's allegations do not plausibly suggest that either McCarthy or Viscariello directly participated in either the denial of rental certificates or the collection of the information required by the landlord registration process; nor does he plead facts plausibly suggesting that McCarthy and Viscariello were aware of any constitutional violations occurring against Plaintiff as a result of the rental certificate or landlord registration process or that they failed to remedy those violations or acted with deliberate indifference to Plaintiff's rights.

29

The allegations also do not plausibly suggest that McCarthy or Viscariello created or allowed a policy under which unconstitutional practices occurred.  Plaintiff's allegations that McCarthy approved changes to the Ordinance that resulted in an inability of building inspectors to timely inspect properties, altered the function of the Housing Standards Board, and supported more aggressive enforcement of the landlord registration requirement do not suggest that McCarthy created or allowed a policy under which unconstitutional practices occurred, nor do Plaintiff's vague allegations that Viscariello was "responsible" for enforcing the Ordinance suggest that Viscariello allowed unconstitutional practices to occur.  Notably, Plaintiff does not include any factual allegations plausibly suggesting that these "policies" resulted in unconstitutional practices.

Similarly, Plaintiff's allegations that McCarthy and Viscariello failed to supervise or train subordinates do not plausibly suggest personal involvement because he does not also allege facts plausibly suggesting that McCarthy or Viscariello were grossly negligent in the alleged failure.  The Second Circuit defines "gross neligence" as "a higher degree of culpability than mere negligence[;] [i]t is the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of . . . harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." *Respardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).  The Second Circuit additionally has found that the standard for gross negligence is satisfied when "the plaintiff establishes that the defendant-supervisor was aware of the subordinate's prior substantial misconduct but failed to take appropriate action to prevent future similar misconduct before the plaintiff was eventually injured." *Respardo*, 770 F.3d at 117.  In particular, Plaintiff's allegations that McCarthy failed to train subordinates on how to avoid

potential constitutional rights violations and that Viscariello supervised staff and failed to train subordinates to inform landlords of their constitutional rights do not plausibly suggest that either McCarthy or Viscariello were aware of any misconduct on the part of subordinates, much less that they deliberately failed to act on that knowledge.

Lastly, regarding Plaintiff's argument that Viscariello failed to implement a procedure for granting Plaintiff temporary rental certificates until inspections could be performed, Plaintiff does not allege that he ever attempted to obtain any such temporary rental certificates after refusing to consent to inspections.  Plaintiff's attempt to put the burden on Defendants is contrary to the plain text of the Ordinance, which states that "[a]n owner may apply for a temporary rental certificate whenever a Building Inspector is unable to inspect the unit within five working days of receipt of an application for a rental certificate."  Schenectady City Code § 210-8(B)(1).  Notably, there is no duty imposed on the City to provide temporary rental certificates in the absence of an application for a temporary rental certificate from the owner/landlord.  Because Plaintiff has not alleged that he applied for any temporary rental certificates, he cannot use the failure to grant him temporary rental certificates as a basis for his claims against Defendants.

For all the above reasons, Plaintiff has not provided factual allegations to plausibly suggest that McCarthy and Viscariello were personally involved in the alleged constitutional violations and therefore cannot show that all the requirements of his claims against these defendants can be met.  Plaintiff's constitutional claims against McCarthy and Viscariello therefore must be dismissed.

### b.    Qualified Immunity

Alternatively, the Court finds that, based on Plaintiff's own factual allegations, McCarthy and Viscariello would be protected from liability as a matter of law by the doctrine of qualified immunity.  "'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 [2012]).  "'A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Milling*, 876 F.3d at 59 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 [2011]).  "Thus, qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Milling*, 876 F.3d at 59.

Plaintiff premises his opposition to Defendants' argument of qualified immunity on the fact that the rights to be free from warrantless searches, retaliation for assertion of rights, and arrest or prosecution without probable cause are all established constitutional rights.  (Dkt. No. 15, Attach. 1, at 24 [Pl.'s Opp'n Mem. of Law].)  While Plaintiff is correct that these are all well-established constitutional rights, such fact alone does not preclude a finding that Defendants are entitled to qualified immunity.  Rather, the relevant consideration is whether any reasonable official would have understood that Defendants' specific conduct violated these broad rights. The Court is not persuaded.

Regarding the right to be free from warrantless searches, Plaintiff has not alleged that Defendants (personally or through use of subordinates) have conducted any improper warrantless search of any of his rental properties. To the extent that Plaintiff premises his argument on the alleged inspection of his business records, there is no reason to believe that, even if the actions of McCarthy, Viscariello, and code enforcement staff violated a well-established right to be free from unreasonable searches under the Fourth Amendment, a reasonable officer would have been aware that such conduct was unconstitutional. Plaintiff argues that Defendants should have been aware of the unconstitutional nature of the disclosures outlined in the registration requirement based on the Supreme Court's 2015 decision in *Patel*, 135 S.Ct. 2443. (Dkt. No. 15, Attach. 1, at 7-11, 24-25 [Pl.'s Opp'n Mem. of Law].) In *Patel*, the Supreme Court found a statute that required hotel owners to make available records containing specific information about guests to the police on demand or be subject to misdemeanor criminal charges was facially unconstitutional because it did not afford the hotel operators any opportunity for precompliance review. *Patel*, 135 S.Ct. at 2447.

However, the registration requirement in the Ordinance differs from the statute in *Patel*. While the statute in *Patel* imposed criminal penalties on hotel owners who failed to make records available to police, there is nothing in the Ordinance that would subject a prospective landlord to criminal or other penalties for simply refusing to provide the required information with his landlord registration form. Rather, the only relevant way in which the landlord could be subject to criminal penalties related to the registration requirement is if he chose to attempt to rent his property without a proper registration. *See* Schenectady City Code § 210-4(B) ("It shall be unlawful for any owner to offer for rent, or to rent any unit, or to allow any rental unit to be

33

occupied without having first registered pursuant to this chapter.").  Additionally, unlike the statute in *Patel*, the Ordinance does not allow for inspection of Plaintiff's records on demand; rather, Plaintiff is required only to present the specified information when submitting the landlord registration statement (as well as any updates necessary to keep the information current and accurate), which results in a far lesser intrusion than would occur if Plaintiff were in fact required to submit his actual records for inspection at any time at the discretion of the code enforcement office.  Further, while the statute in *Patel* required the hotel owners to produce the actual records to police for inspection, nothing in the Ordinance suggests that Plaintiff, as a landlord, is required to provide his actual records along with a landlord registration statement.  Rather, Section 210-5 indicates only that the landlord must provide certain information on the required form; the only record that a landlord is required to physically provide is a copy of the current declaration page of any insurance he is required to disclose, which the Ordinance states can be "considered proprietary and shall not be disclosed to the public" without affording the landlord the opportunity to object if the landlord requests such proprietary status.  Schenectady City Code § 210-5(A)(1).  Therefore, Section 210-5 does not allow for the indiscriminate inspection of Plaintiff's records that was present in *Patel*.  Because the Ordinance does not give the City or code enforcement officers any authority to inspect Plaintiff's business records, but rather merely requires him to provide certain basic information, the Court finds that *Patel* would not have provided warning to McCarthy or Viscariello as to whether the disclosure requirement in the Ordinance violates clearly established law.

Regarding the right to be free from retaliation for asserting his right to refuse consent to inspect his rental units, there is nothing to suggest that any reasonable person would have

understood that failure to obtain an inspection warrant after Plaintiff's refusal of consent would be a violation of Plaintiff's First Amendment rights.  As discussed in above Part III.B of this Decision and Order, the Ordinance provides the City with a discretionary ability to seek a warrant to inspect a rental property, and then only if there is reasonable cause to believe that there are violations occurring in the rental property.  Schenectady City Code § 210-9(B). Plaintiff has not alleged any facts plausibly suggesting that building inspectors failed to seek a warrant based on retaliatory animus for Plaintiff's refusal to grant consent, much less that Viscariello or McCarthy were aware of or approved of any such retaliatory animus.

Regarding the right to be free from arrest or prosecution without probable cause, Plaintiff has failed to allege facts plausibly suggesting that he was arrested or prosecuted without probable cause.  In the Complaint, Plaintiff alleges that Defendants initiated a criminal proceeding against him "for not having a rental certificate for one of his rental units."  (Dkt. No. 1, at ¶ 16 [Compl.].)  Plaintiff reiterates in his affidavit that he was issued an appearance ticket for, and charged with, renting without a rental certificate in violation of Section 210-6 of the Ordinance.  (Dkt. No. 15, at ¶¶ 30-31 [Pl.'s Aff.].)  Because Plaintiff acknowledges that he did, in fact, not have rental certificates for at least some of his properties and does not allege that the appearance ticket and charge was in relation to a rental property for which he did have a valid rental certificate, he has not alleged facts to plausibly suggest that this criminal proceeding (even if later dismissed) was not supported by probable cause when brought.  He has therefore not suggested that Defendants have violated a well-established right, much less that any such violation met the requisite standard for unreasonableness.

Based on the above, Plaintiff has not alleged facts plausibly showing both that Defendants violated his constitutional rights and that any reasonable official would have been aware that Defendants' conduct violated Plaintiff's rights.  Consequently, even if the Complaint contains sufficient factual allegations to plausibly state constitutional claims against McCarthy and Viscariello (a finding that this Court declines to make), those Defendants would be insulated from liability by the doctrine of qualified immunity.

**E.    Whether Plaintiff's Factual Allegations Plausibly Suggest His Constitutional Claims Against Defendants**

Because the Court has already determined that Plaintiff's Complaint must be dismissed based on res judicata, or, alternatively, principles of municipal liability, lack of personal involvement, and qualified immunity, the Court need not, and does not, discuss Plaintiff's substantive constitutional claims in any detail in this Decision and Order other than to note that it accepts all of Defendants' arguments on this issue as an alternative ground for dismissal.

**F.    Whether Plaintiff Should Be Granted Leave to Amend**

After carefully considering the matter, the Court answers this question in the negative for the following reasons.

"Courts should generally not deny leave to amend a *pro se* complaint unless amendment would be futile."  *Morales v. Weiss*, 596 F. App'x 36, 37 (2d Cir. 2014) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 [2d Cir. 2000]).  The Second Circuit noted in *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21 (2d Cir. 2017), that it was improper to deny the plaintiff leave to amend his complaint in the same order in which it granted the defendants' motion to dismiss because such action essentially required the plaintiff to amend his complaint before he was notified of the deficiencies in his original complaint.  *Cresci*, 693 F. App'x at 25.  However,

the case that *Cresci* relied on, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160 (2d Cir. 2015), specifically noted that "[o]ur opinion today, of course, leaves unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility." *Loreley*, 797 F.3d at 190; *see also F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (upholding the District Court's finding that amendment would be futile in a situation where the plaintiff requested leave to amend in its opposition to the motion to dismiss in the event that the complaint was found to be insufficient because the plaintiff offered no clue how the defects identified could be cured through an amendment).  Therefore, the Court is not required grant Plaintiff leave to amend, even though he expressly requested the opportunity to amend should the Court find the Complaint deficient, if amendment would be futile.  "[W]hen a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *accord F5 Capital*, 856 F.3d at 89; *Bridgeforth v. U.S. Navy Recruitment Office*, 11-CV-0431, 2011 WL 5881778, at *2 (N.D.N.Y. Nov. 23, 2011) (McAvoy, J.) (collecting cases); *see also Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) ("Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts to support the claim.").

The Court concludes that allowing Plaintiff the opportunity to amend the Complaint would be futile.  Specifically, the Court does not see any indication that Plaintiff could cure the defects in the Complaint so as to not only preclude the application of res judicata, but also to

overcome the factual insufficiencies related to municipal liability as to the City and personal

involvement as to McCarthy and Visceriello.  In making its findings, the Court has granted

Plaintiff the special solicitude owed to a *pro se* litigant[8] and considered the allegations in his

affidavit and opposition memorandum of law in an effort to fill some of the gaps in the factual

allegations of the Complaint; however, even those additional factual allegations do not suggest

that Plaintiff can state plausible claims against the Defendants.

Plaintiff also requested the opportunity to amend to add two defendants, Jeffrey Briere

and Krystine Smith.  (Dkt. No. 15, at ¶¶ 30-32 [Pl.'s Aff.].)  Plaintiff alleges that Briere and

Smith retaliated against him in violation of his First Amendment right to refuse to give consent

to inspect his rental properties in the following ways: (1) Briere issued him an appearance ticket

for a violation of Section 210-6 after he informed the code enforcement office that he was not

consenting to a warrantless inspection on one of his properties; and (2) in court, Smith charged

him with the misdemeanor of renting without a rental certificate.  (Dkt. No. 15, at ¶¶ 30-31 [Pl.'s

Aff.]; Dkt. No. 15, Attach. 1, at 19 [Pl.'s Opp'n Mem. of Law].)   "A plaintiff asserting a First

Amendment retaliation claim must establish that: '(1) his speech or conduct was protected by the

First Amendment; (2) the defendant took an adverse action against him; and (3) there was a

causal connection between this adverse action and the protected speech.'" *Matthews v. City of

New York*, 779 F.3d 167, 172 (2d Cir. 2015).

Plaintiff's statements do not show that he could plausibly allege a claim of First

Amendment retaliation against either Briere or Smith.  Notably, in the documents that Plaintiff

---

[8]       The Court has done so despite its strong suspicion that Plaintiff's papers (which
are properly formatted and filled with Blue Book legal citations) were authored (or at least
assisted) by an attorney.

submitted along with his affidavit is the appearance notice and an Information signed by Briere.[9]

(Dkt. No. 15, at 21-14.)  In the Information, Briere notes that Plaintiff violated Section 210-6 of

the Ordinance (related to permitting occupancy of a rental unit without a current valid rental

certificate or temporary rental certificate) because an inspection on December 7, 2015, revealed

that the rental unit in question was being occupied by a person other than Plaintiff (the owner)

despite that fact that no rental certificate had been issued for that property, and no application for

a rental certificate had ever been filed for that property.  (*Id.* at 21-23.)  Plaintiff was given 48

hours to abate the violation by obtaining a rental certificate but failed to do so; follow-up

inspections on January 13, 2016, and February, 9, 2016,[10] revealed that Plaintiff had not

complied with the order to abate the violation and he was issued an appearance ticket for this

violation on February 9, 2016.  (*Id.* at 21, 23.)  In his affidavit and opposition memorandum,

Plaintiff alleges that he applied for a rental certificate for the applicable property on December

10, 2015, which is three days after the December 7, 2105, inspection by Briere that revealed

---

[9]     The Court finds that it may consider these documents due to the specific nature of the pleadings in this case.  Notably, Plaintiff's First Amendment retaliation claims against Briere and Smith are asserted for the first time in his opposition memorandum of law and attached affidavit in conjunction with Plaintiff's request that, should his Complaint be found deficient, he should be granted leave to amend and add Briere and Smith as defendants to pursue these claims.  (Dkt. No. 15, at , ¶¶ 30-32 [Pl.'s Aff.]; Dkt. No. 15, Attach. 1, at 19 [Pl.'s Opp'n Mem. of Law].)  Therefore, to the extent that the Court is treating Plaintiff's newly raised claims as a proposed Amended Complaint for the purposes of determining whether that amendment would be futile, the Court may consider documents attached to the opposition memorandum and affidavit as they relate to Plaintiff's First Amendment retaliation claims against Briere and Smith.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("On a 12(c) motion, the court considers, 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'").

[10]     Of note, Plaintiff does not allege that any of these "inspections" violated the Fourth Amendment.

Plaintiff's violation of Section 210-6. Therefore, Plaintiff's own proposed factual allegations plausibly suggest that the action that initiated Plaintiff's criminal charge was not his refusal to consent to an inspection in conjunction with a rental certificate application (his alleged protected speech), but rather the identification of his violation of the Ordinance. Additionally, Plaintiff alleges that he informed the code enforcement office of his refusal to consent to a warrantless inspection in conjunction with his application on December 10, 2015, after which he was issued an appearance ticket. (Dkt. No. 15, Attach. 1, at 19 [Pl.'s Opp'n Mem. of Law].) However, the temporal proximity is not as close as Plaintiff's vague characterization makes it appear. Rather, Plaintiff refused consent on December 10, 2015, and was not issued an appearance ticket until February 9, 2016, approximately two months later. While two months is not necessarily too long a time to preclude inference of a causal connection between Plaintiff's speech (assuming it is protected speech) and the appearance ticket, "'[a]n intervening event between the protected activity and the adverse . . . action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference.'" *Rumsey v. Northeast Health, Inc.*, 89 F. Supp. 3d 316, 336 (N.D.N.Y. 2015) (Sannes, J.) (quoting *Joseph v. Marco Polo Network, Inc.*, 09-CV-1597, 2010 WL 4513298, at *18 [S.D.N.Y. 2010]; citing *Gubitosi v. Kapica*, 154 F.3d 30, 33 [2d Cir. 1998]).

Here, following the initial discovery of Plaintiff's violation of Section 210-6 and his subsequent rental certificate application and refusal to consent to a warrantless inspection, Plaintiff was afforded with two months to come into compliance with Section 210-6 before the appearance ticket was issued, a period that is well beyond the 48 hours he was initially given to obtain a rental certificate. Plaintiff could have complied with the Ordinance and avoided an

appearance ticket and criminal proceedings by either (a) allowing an inspection to obtain a rental certificate, or (b) ceasing to allow a tenant to live in the property; he did neither.  Plaintiff also could have complied with Section 210-6 by applying for a temporary rental certificate.  Notably, Section 210-8(b) notes that, to obtain a 60-day temporary rental certificate, the owner must submit an application for a temporary rental certificate along with "a sworn affidavit of the owner that the rental unit substantially complies with the standards set forth in this section." Schenectady City Code § 210-8(B).  What Section 210-8(B) does not require is an inspection. *Id.*  Plaintiff therefore could have sought and obtained a temporary rental certificate without requiring him to consent to a warrantless inspection; yet he does not allege or give any indication that he made any effort to do so.  Plaintiff's failure to take any of the actions available to him (particularly seeking a temporary rental certificate, which required him to neither consent to a warrantless inspection nor evict his tenant) is an intervening event that severs the causal connection between his speech and the issuance of the appearance ticket (even setting aside the fact that the code enforcement office had identified the violation and notified Plaintiff of that violation before Plaintiff's speech ever occurred).  In addition, even if Plaintiff were able to allege facts plausibly suggesting a *prima facie* case of retaliation (a finding the Court declines to make), Briere's Information sufficiently demonstrates that Plaintiff would have received a notice of appearance and been subject to a criminal charge "regardless of the protected speech."  *Shub v. Westchester Cmty. Coll.*, 556 F.  Supp. 2d 227, 251 (S.D.N.Y. 2008) ("Once a plaintiff satisfies the three elements necessary to establish a First Amendment claim, the defendant may avoid liability if it can 'demonstrate by a preponderance of the evidence that is would have taken the same adverse action regardless of the protected speech.").  Plaintiff therefore cannot state a

41

plausible claim for First Amendment retaliation against Briere or Smith based on the appearance ticket and subsequent criminal charge.  It therefore would be futile to allow him the opportunity to amend the Complaint to add Briere and Smith as defendants based on the asserted First Amendment retaliation claims.

For all of these reasons, the Court denies Plaintiff's request to amend his Complaint, despite his *pro se* status, because amendment would not cure the identified defects and would therefore be futile.

### G.    Whether the Court Should Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

Because the Court finds that Plaintiff's federal law claims should be dismissed, the Court must also determine whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against the City, McCarthy, and Viscariello.  After carefully considering the matter (including the factors of judicial economy, convenience, fairness and comity), the Court finds that these state law claims would more appropriately be litigated in state court; the Court therefore declines to exercise supplemental jurisdiction over these state law claims even if they are not barred by the doctrine of res judicata (a question the Court need not, and does not, reach).  *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*, 453 F. App'x 105, 107 (2d Cir. 2011) (stating that, "[i]n deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh 'the values of judicial economy, convenience, fairness, and comity,'" and that "'in the usual case in which all federal-law claims are eliminated before trial,' the balance of factors will weigh in favor of

declining to exercise supplemental jurisdiction") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 & n.7 [1988]).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 11) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>** such that Plaintiff's

federal claims are **<u>DISMISSED</u> with prejudice** and his state law claims are **<u>DISMISSED</u>**

**without prejudice** to refiling in State Court pursuant to the governing limitations period(s) and

any applicability of the doctrine of res judicata.

Dated: March 27, 2018
          Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

43